**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 25-CR-48-CJW-MAR |
| Plaintiff, | | |
| vs. | | **ORDER** |
| EDINTON GRUGBAY WRIGHT, | | |
| Defendant. | | |

_____

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 3

II.   STANDARD OF REVIEW ....................................................... 3

III.  DISCUSSION ................................................................... 4

      A.    Procedural History ................................................... 4

      B.    Objections to Factual Findings ..................................... 6

            1.    Government's Objections to Factual Findings ............. 6

            2.    Defendant's Objections to Factual Findings ............. 8

      C.    Motion to Suppress .................................................. 11

            1.    Traffic Stop ................................................... 11

            2.    Statements Made to Law Enforcement on October 21, 2023 .... 16

            3.    Seizure of Cell Phone ....................................... 18

4. Time Before Search Warrant for Cell Phone..........................20

5. Phone Search Before Warrant Issued................................22

D. Motion to Dismiss ..................................................................23

E. Scope of Cross Examination and *Leon* Good Faith Exception ............25

IV. CONCLUSION ........................................................................................26

# I.    INTRODUCTION

Before the Court is a Report and Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending the Court deny defendant's motion to dismiss and motion to suppress. (Doc. 54). The government and defendant both filed objections to the R&R. (Docs. 56 & 57). For the following reasons, the government's objection is **sustained in part and overruled in part**, defendant's objection is **sustained in part and overruled in part,** the R&R is **adopted as modified**, defendant's Motion to Suppress (Doc. 25) is **denied**, and defendant's Motion to Dismiss is **denied** (Doc. 26).

# II.    STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's R&R, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[ ] a de novo review of the disputed portions of a magistrate judge's [R&R]"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's R&R when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of Judge Roberts' R&R de novo.

Case 1:25-cr-00048-CJW-MAR    Document 58    Filed 11/20/25    Page 3 of 26

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (cleaned up)[1] (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

#### A. Procedural History

Defendant was charged with possession of firearm by a felon in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8) and is currently awaiting trial. (Doc. 3). On July 31, 2025, defendant filed a motion to suppress several pieces of evidence and statements made by defendant collected during his interaction with Cedar Rapids police on October 21, 2023, and the related investigation. (Doc. 25). Also on July 31, 2025, defendant filed a motion to dismiss. (Doc. 26). Defendant later added a supplement to his motion to suppress which added more information about the specifics of the items he requested be suppressed. (Doc. 31) (listing as the items to be suppressed (1) the red cell phone from the seized vehicle, (2) the firearm from the yard nearby where police apprehended defendant, (3) any statements made by defendant about ownership of

---

[1] In electing to still used the (cleaned up) parenthetical here, the Court is expressing its agreement with a recent special concurrence from the Iowa Court of Appeals. *State v. Landrum*, No. 24-2020, 2025 WL 3022865, at *8 (Iowa Ct. App. Oct. 29, 2025) (Langholz, J., concurring specially).

the cell phone, and (4) the results of the search warrant executed on the cell phone). The government filed a resistance to defendant's motion to suppress and a resistance to defendant's motion to dismiss. (Docs. 36 & 39).

On September 2, 2025, Judge Roberts held a hearing on the motions. (Doc. 41). At the hearing, Cedar Rapids police officers Austin Bailey, Jeff Holst, and John O'Brien testified. (*Id.*). Defendant also testified. (*Id.*). The government offered, and the Court admitted, Exhibits 1 through 12, which included body camera videos from three Cedar Rapids police officers, dash camera video from a patrol vehicle on scene on October 21, 2023, and several pieces of paperwork related to defendant's cell phone and the vehicle from which defendant fled. (*Id.*, at 2). At the conclusion of the hearing, Judge Roberts granted the parties the opportunity to provide additional briefing on the issue of the scope of defendant's testimony at the hearing. (Doc. 42). On September 9, 2025, defendant filed an additional brief. (Doc. 43). On September 11, 2025, the government did the same. (Doc. 44). On October 20, 2025, Judge Roberts issued his R&R, recommending that the Court deny defendant's motion to suppress and deny defendant's motion to dismiss. (Doc. 54, at 46, 49, 52). On November 3, 2025, the government and defendant each filed objections to the R&R. (Docs. 56 & 57).

In his objection, defendant takes a scattershot approach, objecting to nearly all Judge Roberts' conclusions of law and several of his factual findings, thus requiring the Court to review significant portions of the R&R de novo. The government focuses its objection to Judge Roberts' factual findings and his determination that defendant was credible during the September 2, 2025 hearing. The government also indirectly re-asserts its objection to Judge Roberts' ruling on the permissible scope of cross examination of defendant, which the Court responds to below. The parties do not distinguish which factual objections pertain to the motion to suppress and which to the motion to dismiss, so the Court does not distinguish them either.

5

Because defendant objects to significant portions of the R&R, the Court finds it more expeditious to proceed through the R&R reviewing it de novo rather than to pick through defendant's objections to determine which parts of the R&R they pertain to and require review de novo and which parts of the rest of the R&R require review for clear error. The Court will first address the objections to Judge Roberts' findings of fact and will then turn to the objections to Judge Roberts' conclusions of law.

### B.    Objections to Factual Findings

The Court has independently reviewed the record and finds no errors in Judge Roberts' detailed and thorough findings of fact except for the few specific, minor changes based on the parties' objections detailed in this section below. Apart from those objections, the Court adopts Judge Roberts' factual findings in their entirety. To the extent they are necessary, the Court includes additional facts in the additional analysis sections below.

#### 1.    Government's Objections to Factual Findings

The government objects primarily to two of Judge Roberts' factual findings. First, the government objects to Judge Roberts' statement that Officer O'Brien "is currently assigned as an FBI Safe Streets Task Force Officer." (Doc. 54, at 8); (Doc. 56, at 1). The Court sustains this immaterial objection. Officer O'Brien testified that while he was on the FBI Safe Streets Task Force in October 2023, he is "currently . . . assigned to the Investigation Division of the [Cedar Rapids] police department." (Doc. 55, at 47).

Second, the government objects to Judge Roberts' finding that defendant was credible when defendant testified at the September 2, 2025 suppression hearing. (Doc. 56, at 1–5); *see also* (Doc. 54, at 4). Judge Roberts clarified his finding, stating that his "credibility finding is very narrow with respect to defendant on the limited subject of his testimony [at the hearing]." (Doc. 54, at 4 n.2). Judge Roberts further wrote that "[a]t stake is merely whether further examination about the events of October 23, 2023 would

affect the credibility of defendant's statements about seeking return of his cell phone." (*Id.*, at 27).

"A district court's credibility determinations are virtually unreviewable on appeal." *United States v. Wunder*, 414 F.3d 1019, 1022 (8th Cir.2005); *accord United States v. Dierling*, 131 F.3d 722, 736 (8th Cir. 1997) (stating the "court's assessment of the credibility of witnesses is nearly unreviewable"). Even if reviewable, a "court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility." *United States v. Allmon*, 500 F.3d 800, 806 (8th Cir. 2007) (cleaned up) (quoting *United States v. Plancarte-Vazquez*, 450 F.3d 848, 852 (8th Cir. 2006)); *Hicks v. Norwood*, 640 F.3d 839, 842 n.7 (8th Cir. 2011) ("We note, however, that the decision to credit testimony of witnesses who tell coherent and facially plausible stories that are not contradicted by extrinsic evidence can virtually never be clear error." (cleaned up)).

Here, the Court questions the extent to which it can reach the issue of witness credibility at all. Judge Roberts presided over the hearing on September 2, 2025, and was able to observe defendant's demeanor while defendant testified, in addition to hearing defendant's statements. The Court does not have the benefit of those observations, and thus even reviewing the entire record de novo, cannot reach a contrary conclusion to that of Judge Roberts. For that reason, the government's objection to Judge Roberts' credibility determination is overruled. The government's related objections to factual findings based solely on defendant's testimony, (Doc. 56, at 4–5), are overruled for the same reasons; Judge Roberts found defendant's testimony credible, and the Court is not able to reach a contrary conclusion from reading a cold transcript. *See Hicks*, 640 F.3d at 842 n.7 ("We note, however, that the decision to credit testimony of witnesses who tell coherent and facially plausible stories that are not contradicted by extrinsic evidence can virtually never be clear error." (cleaned up)). To the extent the government's

7

objection to Judge Roberts' credibility finding is really an objection to the limited scope of cross-examination that Judge Roberts permitted, the Court discusses that issue below.

## 2. *Defendant's Objections to Factual Findings*

Defendant objects to four of Judge Roberts' factual findings.

First, defendant asks that the Court reject Judge Roberts' finding that although the vehicle defendant was riding in had temporary dealer registration tags, there was no license plate on the vehicle's front. (Doc. 57, at 3). The Court overrules this objection.

License plates are distinct from dealership tags, as evidenced by their distinct treatment in the Iowa Code. *Compare* Iowa Code § 321.37 (display of plates) *with id.* § 321.25 (application for registration and title – cards attached). For example, license plates are issued by the state and permanent; dealership tags are provided by the dealer and are valid for forty-five days only. *See e.g.*, *id.* § 321.166 (vehicle plate specifications); *id.* § 321.25. The Court finds that although the vehicle had a paper dealership tag, it did not have a front license plate. (Doc. 55, at 7 (Officer Bailey testifying "[i]t didn't have a front license plate or license plate in the back.")); (*Id.*, at 18 (Officer Bailey testifying that the vehicle had "some kind of temporary registration tag"); (Doc. 37-3, at 16:51 (showing no front license plate)).

Although defendant relies on Exhibit 8, (Doc. 37-7), which is a police vehicle disposition form that lists a license plate number, to show that the vehicle must have had license plates, that argument overlooks Officer Bailey's testimony that there were no license plates and that Exhibit 8 was not consistent with his recollection from being present on scene. (Doc. 55, at 18). The Court does not find that Exhibit 8 overcomes the testimony at the hearing that there were no license plates on the vehicle and does not independently reach the conclusion that the vehicle had license plates following its de novo review of the record.

Next, defendant asserts that the Court should reject Judge Roberts' finding that the vehicle's doors were left open and find that the vehicle's doors were not left open when defendant and the driver ran from it. (Doc. 57, at 4); *see also* (Doc. 54, at 5). The Court sustains this objection, although the Court finds that the fact is immaterial in the Court's legal analysis. The only mention of the vehicle's doors at the hearing was from Officer Bailey, who stated that "both doors—the front passenger and front driver's side door—opened, and two males began fleeing from the car." (Doc. 55, at 9). Officer Bailey did not state that the two males left the doors open or that they closed them. The Court, however, can see on Officer Bailey's bodycam that when he gets out of his patrol vehicle and begins his pursuit, the doors of the vehicle are closed. (Doc. 37-1, at 0:05). Officer Bailey was close enough to the vehicle to see the two occupants get out and begin to run, and after Officer Bailey parks his vehicle, the doors are closed. There is no mention of anyone else closing the doors. The Court, thus, concludes that the vehicle's doors were not left open when defendant and the driver fled.

Third, defendant objects to Judge Roberts' finding on the distance from him that police officers located the gun, and specifically, to Judge Roberts' conclusion that "[a]bout 15 to 20 feet from where defendant had stopped, Officer Bailey located a black pistol." (Doc. 57, at 4); *see also* (Doc. 54, at 6). The Court overrules this objection. Officer Bailey testified that the firearm was found "15 feet, 20 feet" from where defendant was stopped. (Doc. 55, at 20–21). Judge Roberts found Officer Bailey credible. (Doc. 54, at 4 n.2). The Court notes that Officer O'Brien listed "[t]he distance between the pistol and the place of [defendant's] capture was approximately 40 yards" in his search warrant application. (Doc. 38, at 5). Judge Roberts credited the testimony of Officer Bailey, who was present on scene, over the warrant application of Officer O'Brien, who was not on scene, and which Officer O'Brien prepared four months later without first-hand knowledge of the facts. Defendant points to Exhibit 1 as showing the

true distance that the firearm was located.  (Doc. 37-1, at 2:39).  The Court has reviewed that exhibit as well as the rest of the record and cannot discern the distance of the gun accurately and certainly not better than the officer on scene.  For that reason, the Court sees no reason to disturb Judge Roberts' finding that the gun was 15 to 20 feet from defendant.

Fourth, defendant objects to Judge Roberts' finding that defendant "initiated discussion of fingerprinting the weapon and asked [Officer Watkins] multiple questions about the process."  (Doc. 57, at 4); *see also* (Doc. 54, at 8).  Defendant requests that the Court instead find that he initiated the conversation but Officer Watkins "went through the general process of fingerprinting."  (Doc. 57, at 4).  The Court overrules this objection.  After reviewing Officer Watkins' back seat camera video, the Court finds that Judge Roberts accurately summarized the interaction between defendant and Officer Watkins.  Defendant asks, "They find my fingerprints on this?" (Doc. 37-4, at 39:44–46), and then asks "They can't tell right now?  That's correct?" and "They can't tell right now?" (*Id.* at 39:48–54).   Officer Watkins responds with information about fingerprinting.  (*Id.*, at 40:04–08).  The Court, like Judge Roberts, finds that interaction as being started by defendant and including at least three additional questions by defendant.  The Court finds any quibble with Judge Roberts' phrasing to be a distinction without a difference.  As to whether Officer Watkins provided information on fingerprinting in response to defendant's questions or not is immaterial.

To summarize, the Court sustains the government's objection to Judge Roberts' finding that Officer O'Brien is currently assigned as an FBI Safe Streets Task Force Officer.  The rest of the government's factual objections are overruled.  The Court sustains defendant's objection to Judge Roberts' finding that defendant and the driver left the vehicle's doors open when they fled.  The rest of defendant's factual objections are overruled.  The Court now turns to the legal objections to the motions.

C.       **Motion to Suppress**

The Court tuns next to defendant's legal arguments, beginning with defendant's motion to suppress.   Defendant makes five arguments in his motion to suppress, challenging the legality of the (1) traffic stop, (2) statements made to officers on October 21, 2023, (3) seizure of his cell phone, (4) length of time before the execution of the search warrant, and (5) the search warrant itself.   Defendant's traffic stop argument incorporates arguments related to the search of the vehicle and its surrounding area, and the Court starts there.

1.       **Traffic Stop**

Defendant argues Judge Roberts erred in concluding there was no traffic stop. Defendant argues the traffic stop was illegal and any items seized as a result of the stop are fruit of the poisonous tree.  Defendant's argument fails for several reasons.

As a preliminary matter, a passenger in a vehicle with no ownership interest in it does not have standing to challenge the search of the vehicle.  *United States v. Barragan*, 379 F.3d 524, 529–30 (8th Cir. 2004) ("As a mere passenger, therefore, Barragan could not claim a legitimate privacy interest in one of his 'effects,' . . . and he lacks standing to challenge the search of the vehicle."); *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015) (citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978)).  Defendant admits that he was the passenger of the vehicle at issue here, stating "it is uncontested that Mr. Wright was not the driver of the vehicle."  (Doc. 25, at 3).  Likewise, Exhibit 8, the vehicle disposition form, lists the owner of the vehicle as Alissa Bergdale.  (Doc. 37-7). Defendant has presented no contradictory evidence.  For this reason alone, to the extent that defendant is arguing for suppression of the items seized from the vehicle, his arguments fail.  *See* (Doc. 31, at 1 (listing items seized from the vehicle on the inventory of items to be suppressed including "the red cellular phone that was located within the stopped vehicle [and] any contents located as a result")).   For similar reasons, as

defendant cannot claim a privacy interest in the yard in which officers located "the firearm . . . that officers attempted to attribute to" defendant, (Doc. 31, at 1), his assertion that the Court must suppress that evidence likewise fails. *See United States v. Dawdy*, 46 F.3d 1427, 1430 (8th Cir. 1995) (finding that defendant "had no legitimate expectation of privacy in the surface of the pavement near his car" and therefore it was not error to not suppress it).

A passenger in a vehicle may, however, challenge the stop of the vehicle. The government asserts that there was no traffic stop. (Doc. 36, at 10). Judge Roberts concluded the same. (Doc. 54, at 36 ("[T]he record demonstrates that the officers did not initiate a traffic stop")). The Court also finds defendant fled before officers were able to effectuate the traffic stop. *See* (Doc. 55, at 8 (Officer Bailey testifying that he did not turn on his lights or activate his sirens); Doc. 37-1 at 0:01 (no lights activated on patrol vehicle)). Thus, the Court finds there was no traffic stop. But, even if officers had made a traffic stop, they had reasonable suspicion to do so.

"[A] traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir.2006). "An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle, even if the officer would have ignored the violation but for a suspicion that greater crimes are afoot." *United States v. Enriquez Luna*, 368 F.3d 876, 878 (8th Cir. 2004). Once probable cause to stop a vehicle exists, "the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop." *United States v. Herrera–Gonzalez,* 474 F.3d 1105, 1109 (8th Cir.2007). Instead, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the officer at the time." *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014) (cleaned up). (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "[T]he validity

of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir.2005).

In contrast, a traffic stop based on reasonable suspicion must be based on a "particularized and objective basis for suspecting [criminal activity by] the person who is stopped." *United States v. Bustos- Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (cleaned up). "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *United States v. Roberts*, 787 F.3d 1204, 1209 (8th Cir. 2015) (internal quotations omitted). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Halls*, 40 F.3d 275, 276 (8th Cir. 1994). In addition, "[l]aw enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity." *Bustos-Torres*, 396 F.3d at 942 (citing *Terry v. Ohio*, 392 U.S. 1, 25–31 (1968)).

Under Iowa law, vehicles are required to have a front and back license plate. *See* Iowa Code § 321.37 (requiring that license plates "shall be attached to the motor vehicle, one in the front and the other in the rear"). A vehicle just purchased from a dealer may rely on a temporary paper tag instead of license plates for forty-five days as long as that temporary tag is attached to the rear of the vehicle and has the registration number of the dealer and the date of vehicle's purchase on it. *See* Iowa Code § 321.25. When a member of law enforcement does not see any license plates or temporary registration tags on a vehicle, in violation of state law, they may stop that vehicle to investigate. *United States v. Hollins*, 685 F.3d 703, 707 (8th Cir. 2012) (finding that because officer could

not see the "In Transit" sticker while the vehicle was in motion, the officer had reasonable suspicion to stop the vehicle to verify that there was a sticker and that it was valid); *accord State v. Lyon*, 862 N.W.2d 391, 398 (Iowa 2015) (finding that deputy had a reasonable suspicion to investigate a potential license plate violation when deputy could not see license plate from the road).

At the same time, if law enforcement later determines that the vehicle had license plates or temporary tags, it does not negate the validity of the stop. *United States v. Flores-Sandoval*, 366 F.3d 961, 962 (8th Cir. 2004) (finding that officers had probable cause to stop a vehicle that officer believed did not have a front license plate despite later seeing that the license plate was just hidden by a glare); *United States v. Clayborn*, 339 F.3d 700, 701 (8th Cir. 2003) (finding "justified and lawful" the traffic stop of a vehicle to determine if it had a valid temporary license tag despite the fact that once stopped officer determined that the vehicle's tag was valid). Instead, an officer's actions must simply be objectively reasonable under the circumstances. *Smart*, 393 F.3d at 770.

Here, the record establishes that the vehicle defendant was a passenger in did not have a front or back license plate and any temporary tag was not visible as officers passed the vehicle. (Doc. 55, at 7; Doc. 37-3, at 15:25, 16:51). As Officer Bailey approached the vehicle, he was unable to see a temporary tag on the vehicle before it turned abruptly, jumped a curb, parked on the front lawn of the first residence around the corner from where the vehicle had stopped at a red light, and defendant took off running. (Doc. 55, at 8–9). Seeing the fleeing driver and defendant, Officer Bailey "pulled in behind [the vehicle], exited, and began to pursue on foot." (*Id.*, at 9). At that point, Officer Bailey was unable to locate a temporary tag and did not have time to search for one because he immediately began to chase defendant and "give him verbal commands repeatedly to stop." (*Id.*, at 15). Defendant's challenge to the stop of the vehicle fails because officers had reasonable suspicion to justify stopping it to determine if it had valid temporary tags.

14

That officers were unable to effectuate a stop because defendant fled does not render the potential for the stop invalid. The Court finds no basis for suppression based on this claim.

Relatedly, defendant also seems to challenge the seizure of his person as he includes an argument on his arrest in the section "traffic stop" in his motion to suppress, (Doc. 25, at 3–4), but as the Eighth Circuit already explained in defendant's revocation appeal, "Iowa law makes it a crime to flee from a uniformed officer who is attempting a lawful stop." *United States v. Wright*, No. 24-1095, 2025 WL 429792, at *2 (8th Cir. Feb. 7, 2025) (per curiam) (citing Iowa Code § 719.1(1) (interference with official acts)); *State v. Legg*, 633 N.W.2d 763, 771–72 (Iowa 2001)). Also, a crime independent from the reason for a traffic stop provides independent probable cause as for seizure of a person. *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("Probable cause for arrest or for search and seizure exists where the circumstances are sufficient in themselves to warrant a man of reasonable caution in the belief that criminal activity is in progress or has occurred." (internal quotations omitted)); *see also State v. Wilson*, 968 N.W.2d 903, 918 (Iowa 2022) ("[T]he standard for establishing a violation of the interference with official acts statute is generally fairly low. The key question is whether the officer's actions were hindered." (cleaned up)). Officers had probable cause to suspect that defendant had interfered with their lawful traffic stop, and thus their arrest of defendant for that crime was lawful.

Defendant's reliance on *Wong Sun v. United States* to argue the contrary is misplaced as the defendant in that case had not committed a crime independent of the reason for law enforcement's initial involvement, like the Court concludes defendant did here. 371 U.S. 471, 473 (1963) (describing the first interaction with law enforcement as a feigned attempt to patronize a laundromat before the laundromat was even open for the day). Here, defendant took off running from a lawful traffic stop, impeded law

15

enforcement's ability to conduct that traffic stop, and ignored multiple verbal commands to stop. And regardless of whether the officer had grounds to stop the car, once it jumped a curb and parked in the front lawn of a house, the officer had a reasonable basis to investigate that crime; defendant's flight from the scene impeded the officer's ability to investigate that crime, regardless of whether there was a lawful traffic stop. *See* Iowa Code §§ 321.358 (prohibiting parking in front of a private driveway); 716.7 (prohibiting trespassing). For that reason, defendant was properly placed under arrest and his challenge to the seizure of his person, if any, is unavailing.

Thus, the Court finds that defendant's first argument in his motion to suppress does not provide him grounds for relief, and it overrules defendant's objection to Judge Roberts' conclusions on this issue.

### 2. *Statements Made to Law Enforcement on October 21, 2023*

Next, defendant asserts, that because he "clearly indicated that he would not answer any questions for officers, the questioning regarding the cell phone was improper and should be suppressed." (Doc. 25, at 5). Both parties and Judge Roberts agree that after defendant was placed under arrest, he requested an attorney. (Doc. 25, at 5; Doc. 36, at 13; Doc. 54, at 37). The Court independently concludes the same; defendant requested an attorney when he said, "I would love to speak to my attorney." (Doc. 37-2, at 1:56–57).

"[I]f an accused expresses his desire to deal with the police only through counsel, he cannot be subjected to further interrogation until a lawyer has been made available unless the suspect himself initiates further communication with the police." *Dormire v. Wilkinson*, 249 F.3d 801, 804 (8th Cir. 2001) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)). "Interrogation . . . refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004) (quoting

*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Interrogation, however, does not include a "request for routine information necessary for basic identification purposes." *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) (quoting *United States v. McLaughlin*, 777 F.2d 388, 391–92 (8th Cir. 1995)). Likewise, "an officer's response to a defendant's question does not amount to an interrogation." *United States v. Crisolis-Gonzalez*, 742 F.3d 830, 837 (8th Cir. 2014). Nor does an admission blurted out after any questioning had ended. *Briones*, 390 F.3d at 612.

Here, defendant's statements about the cell phone were not the result of interrogation as they were answers to routine questions by officers or offered spontaneously by defendant himself. Judge Roberts wrote, "I would characterize Officer Watkins's interaction with defendant as her predominantly responding to defendant's questions and attempting to be helpful about the process." (Doc. 54, at 8). The Court agrees and finds, like Judge Roberts, that there was no interrogation that would permit suppression of defendant's statements about the cell phone. Instead, the interaction started with defendant asking, "Can you talk to me for a second?" (Doc. 37-4, at 11:49). Defendant then continues, unprompted by Officer Watkins, with the conversation. (*Id.*). As to the phone specifically, defendant asks, "Did they find my phone?" twice. (*Id.* at 20:14–20:40). Officer Watkins did not ask defendant about the phone or who owned it. For that reason, the Court finds no interrogation occurred that could give rise to suppression of any statements from defendant after he requested counsel.

Although defendant attempts to argue that officers could not ask about insurance information on the vehicle, that statement is misdirected. To the extent defendant relies on this argument to support suppression of his statements about insurance, defendant specifically asked for suppression of "[a]ny statements made on the evening of October 21, 2023 pertaining to ownership of the red cellular phone." (Doc. 31, at 1–2). For that reason, his argument about insurance is misleading. Iowa law requires that all vehicles

operated in the state have valid insurance. *See* Iowa Code § 321.20B(4)(a). But that requirement pertains to drivers of vehicles. *See id.* § 321.20B(1)(a) ("[A] person *shall not drive* a motor vehicle on the highways of this state unless financial liability coverage, as defined in section 321.1, subsection 24B, is in effect for the motor vehicle and unless *the driver has* in the motor vehicle the proof of financial liability coverage card issued for the motor vehicle[.]" (emphasis added)). Defendant has not contested that he was the passenger of the vehicle, and for that reason, even statements about insurance coverage were not likely to elicit an incriminating response from defendant. Rather, as to statements about defendant's cell phone or insurance, the Court finds that defendant's second argument in his motion to suppress also is not availing, and the Court overrules defendant's objections to Judge Roberts' findings on this second issue.

### 3.    *Seizure of Cell Phone*

Third, defendant claims, "[t]he government's warrantless seizure of the cell phone was also not justified." (Doc. 25, at 6). As detailed in the subsection discussing the traffic stop of the vehicle defendant was a passenger in, defendant does not have standing to challenge the search of the vehicle including the resulting seizure of his cell phone because he was a passenger. *See United States v. Thin Elk*, 148 F.4th 595, 598 (8th Cir. 2025) ("Thin Elk was a passenger. He did not have a reasonable expectation of privacy in the vehicle and cannot challenge its search."); *United States v. Davis*, 943 F.3d 1129, 1134 (8th Cir. 2019) ("Because Davis lacks a reasonable expectation of privacy in the SUV as a passenger, he cannot assert a Fourth Amendment challenge to the vehicle search."). The Court notes here that on its review of the record it observed that the red cell phone allegedly belonging to defendant "was located in the passenger door," further supporting the uncontested claim that defendant was a mere passenger in the vehicle. (Doc. 55, at 50).

In any case, there are at least five justifications for law enforcement's seizure of defendant's cell phone from the vehicle, and the Court concludes that any of the five could sufficiently support the seizure. First, as defendant admits,

> [w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

*United States v. Place*, 462 U.S. 696, 701 (1983); (Doc. 25, at 6 (citing *Place*)); *see* (Doc. 55, at 51 (Investigator O'Brien testifying that "people like to take pictures of firearms. They like to take pictures of themselves with firearms. Phones are also used to potentially try to obtain a firearm.").

Second, "an alert or an indication 'by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle.'" *Thin Elk*, 148 F.4th at 600 (quoting *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2010)).

Third, "[a] warrantless search of abandoned property does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment." *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997); *accord United States v. Smith*, 648 F.3d 654, 660 (8th Cir. 2011) (finding that when a defendant abandoned a vehicle in a public area then ran from police he had "relinquished any legitimate expectation of privacy he might have had" in the vehicle and its contents).

Fourth, it was inevitable that the cell phone would have been discovered as the "vehicle would have been towed, rather than left . . ., and a routine inventory search of the vehicle would have been conducted. Thus, [the cell phone] would have inevitably been discovered during an inventory search of the vehicle." *United States v. Alvarez-Gonzalez*, 319 F.3d 1070, 1072 (8th Cir. 2003); *Colorado v. Bertine,* 479 U.S. 367, 375

(1987) (holding that police are authorized to conduct a search of the entire vehicle after it is impounded, as long as standardized procedures are followed and there was a purpose for the investigation other than suspicion of criminal activity).

Last, the driver of the vehicle was also under arrest, which permitted officers to search the vehicle. *New York v. Belton,* 453 U.S. 454, 462–63 (1981) (holding that after making an arrest of the driver of a vehicle police may search the passenger compartment of the vehicle); (Doc. 26, at 2 ("[T]he driver of the vehicle . . . had an arrest warrant . . . [and] also was found with a quantity of marijuana on his person.")).

Here, law enforcement could have relied on their knowledge about cell phones containing evidence of a crime, a dog alert to the vehicle, defendant's abandonment of his cell phone when he fled the vehicle, that the vehicle would have been towed and inventory searched, and that the driver was under arrest, all of which would have defeated defendant's challenge to the seizure of his cell phone, even if he had standing to bring such a challenge. The Court finds no grounds for suppression based on this third issue and overrules defendant's objections to Judge Roberts' conclusions on this issue as well.

### 4. *Time Before Search Warrant for Cell Phone*

As to Judge Roberts' conclusion that the time between when the officers seized the phone and when the officers obtained a warrant to search the phone was reasonable, "[d]efendant objects to the findings here generally in totality." (Doc. 57, at 7). "The duration of a seizure pending the issuance of a search warrant must be reasonable." *United States v. Thomas*, 97 F.4th 1139, 1143 (8th Cir. 2024). "[A] seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons." *Segura v. United States*, 468 U.S. 796, 812 (1984). "To determine the reasonableness of a delay [courts] must balance the privacy-related and law enforcement-related concerns implicated." *United States v. Mays*, 993 F.3d 607, 617 (8th Cir. 2021) (cleaned up).

On the private-interests side, relevant considerations include the significance of the interference with the person's possessory interest, the duration of the delay, whether the person consented to the seizure, and the nature of the seized property. On the government-interests side, relevant considerations include the government's legitimate interest in holding the property as evidence, the nature and complexity of the investigation, the quality of the warrant application and the amount of time we expect the application would take to prepare, and any other evidence proving or disproving law enforcement's diligence in obtaining the warrant.

*Id.* (citations omitted). To further clarify the balancing test, when a person is under arrest and in custody of the police through the entire period that an item is seized but not searched, the interference with that person's possessory interest in that item is minimal. *Segura*, 468 U.S. at 813.

Here, the Court finds that the balance of concerns weighs in favor of a conclusion that the time defendant's cell phone was seized but not searched was reasonable. As the government points out, defendant has been in federal custody since October 30, 2023. (Doc. 36, at 8). He was only out of custody for one week between his arrest on October 21, 2023, and entering federal custody on October 30, 2023. (*Id.*). Defendant is not permitted to have his cell phone while he is in federal custody. *See* (Doc. 55, at 56–57 ("And are inmates in any of those jails allowed to possess personal cell phones? No."). Thus, any interference with his possessory interest in his cell phone since October 30, 2023, has been minimal.

Defendant's claim that "[h]aving access to his phone would allow family members to be able to assist his defense" is meritless as his family members do not have standing to challenge here. *Thomas*, 97 F.4th at 1143–44 (finding defendant's standing questionable when defendant was not the owner of the phone). The Court agrees with Judge Roberts that the record supports that "[f]or the short period that defendant was not in custody, defendant's testimony suggests that he may have sought the return of his

phone from the police, but there is no record of it." (Doc. 54, at 43); (Doc. 55, at 58–59 ("Is there anything to suggest [defendant] even inquired about his cell phone? No. . . . Is there any evidence that someone else requested the return of this cell phone prior to April of 2025? No.")). On the other hand, the government's interest in retaining the phone and preventing destruction of evidence on it was strong. *Mays*, 993 F.3d at 617–18.

Thus, for these reasons, the Court finds that the delay was not unreasonable and defendant's fourth argument is also not a basis for suppression. The Court overrules defendant's objections on this issue.

### 5.    *Phone Search Before Warrant Issued*

Defendant originally claimed that law enforcement must have searched his cell phone before the issuance of a warrant on February 8, 2024, (Doc. 38-1); (Doc. 55, at 64 (warrant issued on February 8)). More specifically, defendant argued that "law enforcement accessed the phone prior to applying for the search warrant, and then only upon finding possible photographs of a prohibited firearm, then utilized the delayed application for search warrant in order to cover the unlawful search of the phone." (Doc. 25, at 13). For those reasons, defendant requested that the cell phone's "contents should be suppressed based on the belief that the phone was searched prior to obtaining the warrant." (Doc. 31, at 2). However, at this point, defendant does not appear to object to Judge Roberts' findings on this issue. The government does not either. For completeness, the Court addresses this argument anyway. "Given the volume and sensitive nature of information stored on modern cell phones, a warrant is generally required before the search of a cell phone seized incident to arrest." *United States v. Bragg*, 44 F.4th 1067, 1071 (8th Cir. 2022) (internal citation marks omitted) (citing *Riley v. California*, 573 U.S. 373, 401 (2014)).

The record simply does not support defendant's belief that his cell phone was searched prior to February 8, 2024. Defendant's iPhone was accessed through Graykey, a software that extracts data and converts it to a readable format, on February 13, 2024, five days after the warrant was issued, as shown in the Graykey extraction report, Exhibit 10. (Doc. 37-9); *see also* (Doc. 55, at 29 (Investigator Holst describing Graykey)). Investigator Holst testified that the phone was not accessed prior to that date, stating that "the phone is secured in our digital forensics lab. . . – there's not many of us in there. There's only three of us that have access. And I would know if somebody, you know, touched the phone or used the device." (Doc. 55, at 32). Investigator Holst then clarified that there was nothing that indicated that anyone who had access to the digital forensics lab had accessed defendant's cell phone before February 13, 2024. (Doc. 55, at 33). Defendant presented no evidence to rebut the government's showing that the cell phone was untouched until several days after the search warrant authorized law enforcement to search it. Thus, the Court finds on de novo review that this final issue in defendant's motion to suppress does not provide grounds for suppression, overrules defendant's objections on this issue, and overrules defendant's motion to suppress in its entirety.

### D. *Motion to Dismiss*

Next, the Court addresses defendant's legal argument related to defendant's motion to dismiss. Defendant objects to Judge Roberts' conclusion that there was no actual and substantial prejudice to defendant based on preindictment delay. (Doc. 57, at 10). In support of his objection, defendant points to the sentence he received for revocation of his supervised release as well as "additional punishment for the same conduct due to the delay." (*Id.*). In addition, defendant claims "[t]he delay in this matter specifically also created timeline issues with regards to being able to ascertain specifically when the government fist [sic] began speaking about information regarding information found in [defendant's] cell phone." (*Id.*).

"[A] defendant must overcome a high hurdle when contending that a pre-indictment delay that does not violate the statute of limitations is violative of the due process clause." *United States v. Jackson*, 446 F.3d 847, 849 (8th Cir. 2006). "The defendant must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him." *Id.* "To prove actual prejudice, a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government." *United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986). "It is not sufficient for a defendant to make speculative or conclusory claims of possible prejudice as a result of the passage of time." *United States v. Sturdy*, 207 F.3d 448, 452 (8th Cir. 2000). "[I]t is the defendant's burden to show that the lost testimony or information is not available through other means." *Id.* "The court will inquire into the reasons for delay only where actual prejudice has been established." *Id.* "If the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay." *United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002).

Defendant cries prejudice without specifying how "the delay resulted in actual and substantial prejudice to the presentation of his defense." *Jackson*, 446 F.3d at 849. Defendant does not point to any witnesses or documents that he has lost. Nor has defendant identified how any specifically lost witness or document negatively impacted his defense. Nor has he shown how that witness or document was lost due to the government's actions. Last, defendant has not shown that he lost a witness or document necessary to his defense, because of the government, that he cannot otherwise access through other means. Instead, the prejudice he decries is more correctly classified as collateral consequences and falls severely short of the specific prejudice required for dismissal of this case based on preindictment delay. As Judge Roberts found, "[u]ltimately, [defendant] has not established how any of these assertions related to the

alleged pre-indictment delay." (Doc. 54, at 52). Because defendant has not met his burden, the Court agrees with Judge Roberts that defendant's motion to dismiss should be denied and the Court overrules defendant's objection to the motion to dismiss. Defendant's motion to dismiss is denied in its entirety.

  **E.**  ***Scope of Cross Examination and* Leon *Good Faith Exception***

  Neither party appears to object directly to Judge Roberts' conclusion on the scope of cross examination of defendant at the hearing. The government, however, attacks it indirectly, claiming that "it was not provided an adequate opportunity to cross examine defendant regarding his credibility." (Doc. 56, at 2). The government then lists the topics that it would have gone into on cross examination if it was given latitude to do so. (*Id.*, at 2–3). Because the Court has overruled defendant's motions, this issue is moot. Whether the government is given additional opportunity to cross examine defendant would make no difference to the outcome here. *See Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) ("When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances and a federal court can no longer grant effective relief, the case is considered moot." (cleaned up)). The Court overrules the government's objection to the scope of its cross examination of defendant.

  Similarly, because the Court has already found that law enforcement properly seized defendant's cell phone and that there was no unreasonable delay by law enforcement in obtaining the search warrant for the cell phone, the Court does not address the *Leon* good faith exception. *See United States v. Leon*, 468 U.S. 897 (1984). This issue is also moot.

## IV.    CONCLUSION

For these reasons, the government's objection (Doc. 56) is **sustained in part and overruled in part.**  Specifically, the Court sustains the government's objection to Judge Roberts' statement that Officer O'Brien is currently assigned as an FBI Safe Streets Task Force Officer.  The rest of the government's objection is overruled.  Defendant's objection (Doc. 57) is also **sustained in part and overruled in part**.  The Court sustains defendant's objection to Judge Roberts' statement that defendant and the driver left the vehicle's doors open when they fled.  The rest of defendant's objection is overruled.  The Court **adopts as modified** the R&R (Doc. 54).  Defendant's Motion to Suppress (Doc. 25) and Motion to Dismiss (Doc. 26) are **denied**.

**IT IS SO ORDERED** this 20th day of November, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa